RECEIVED
MAY 27 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CARISA BERNARD and KENDALL BREAUX** | **CIV. ACT. NO. 14-3429** |
| -vs- | **JUDGE DRELL** |
| **CARLOS STOUT, individually and in his capacity as Chief of Police; WILLIAM WALKER, individually and in his capacity as a Police Officer; Kayla Begnaud, individually and in her official capacity as a Police Officer; CITY OF CARENCRO and CARENCRO POLICE DEPARTMENT** | **MAG. JUDGE PEREZ-MONTES** |

## MEMORANDUM RULING

Considered herein are motions for summary judgment filed on behalf of Defendant City of Carencro ("Carencro") and Defendant Chief of Police Carlos Stout in the above-captioned civil action. (Docs. 43, 45). For the reasons specified below, the court finds that Carencro's motion should be GRANTED, resulting in the dismissal of all claims by Plaintiffs Carisa Bernard ("Bernard") and Kendall Breaux ("Breaux") against Carencro.

I.  BACKGROUND

A. Relevant Facts

On the night of January 28, 2013, Joshua Trosclair ("Trosclair") was lured to a room at the Economy Inn in Carencro, Louisiana by Alisha Simpson ("Simpson"). Trosclair answered a knock at the door and was set upon by two suspects who attempted to rob him. One suspect pulled a gun and fired at him and, after missing his intended target, fled the scene. (Doc. 43-1 at pp. 1-2; Doc. 60 at pp. 4-5).

1

Carencro Police were dispatched to the scene to investigate. Detective William Walker ("Det. Walker") interviewed Trosclair, who identified one of the suspects as Vinny Gary ("Gary"). Trosclair could not identify the second suspect because he wore a mask over his face. (Doc. 43-1 at p. 5 citing Affidavit of Det. Walker at ¶¶ 2-3).

Det. Walker viewed surveillance footage from the motel office, which depicted Simpson meeting with the suspects prior to the incident. (Affidavit of Det. Walker at ¶ 5). Simpson later confessed to Det. Walker that Gary, Simpson's cousin, was indeed one of the suspects, but stated that she could not identify the second suspect. (Id. at ¶ 6). Subsequent conversations with informants led to the identification of the second suspect as "Kendall" or "Kenda," but no last name was given. (Id. at ¶ 8).

Det. Walker interviewed Gary on February 19, 2013, at which time Gary identified the second suspect as Kendall Breaux, Jr. ("Breaux"). Det. Walker attests that Gary also named Breaux as the person who fired the shot at Trosclair. (Id. at ¶ 9).

Det. Walker met with and transported Breaux to the Carencro Police Department for questioning on February 19, 2013. Det. Walker attests that Breaux claimed to know nothing about the events in question, but, when confronted with the prospect of the surveillance video, stated he wanted to, "'see if you can really tell if it's me or not in the video.'" (Id. at ¶¶10-11). Breaux was then arrested for attempted armed robbery and attempted first degree murder. (Id. at ¶13). Det. Walker encountered Breaux's mother, Bernard, outside the police station and informed her of Breaux's arrest. (Id. at ¶ 14).

The following day, February 20, 2013, Deputy Jules Broussard of the Lafayette Parish Sheriff's Office forwarded to Det. Walker a written statement from Trosclair to Det. Walker. In it, Trosclair stated that, based on his personal knowledge, Breaux was not the masked gunman

2

because Breaux was not as tall or big as the gunman and Breaux's voice was not as deep as that of the gunman. The statement was signed by Trosclair and witnessed by Bernard and Bernard's own mother, Theresa Dean. Deputy Broussard did not sign the statement as a witness. (Id. at ¶ 15).

Upon reviewing Trosclair's written statement, Det. Walker contacted Bernard and advised her that since CPD had jurisdiction over the crime, he would need to interview Trosclair himself. Det. Walker also asked Bernard how she came into contact with Trosclair. According to Det. Walker, Bernard told him that Trosclair contacted her. (Id. at ¶ 18).

Det. Walker interviewed Trosclair on February 21, 2013 at the police department. Trosclair stated that he had not responded to Det. Walker's prior attempts to contact him because he was arrested on a weapons charge the day after the attempted robbery at the Economy Inn. Trosclair stated that Bernard transported him the Sheriff's office to give his written statement and reiterated that he did not believe Breaux was the masked gunman. (Id. at ¶¶ 22-23). Det. Walker took this information, as well as Trosclair's written statement, to Commissioner Thomas Frederick of the Fifteenth Judicial District Court, who advised that he was uncomfortable with releasing Breaux while the investigation was ongoing. (Id. at ¶ 24). Assistant District Attorney Roger Hamilton concurred, suggesting that Det. Walker should complete his investigation prior to releasing Breaux. (Id. at ¶ 25).

On February 23, 2013, Bernard authored an article criticizing the CPD and Det. Walker, specifically, and posted the article on Facebook. The article was reposted on a website entitled "Busted in Acadiana[.]" (Doc. 1 at ¶ 8).

In furtherance of his investigation, Det. Walker reviewed tapes of telephone calls between Gary and his girlfriend, during which it is alleged he said, "they got both of us." Det. Walker asserts that in one phone call between Breaux and Bernard, "Bernard asked if Breaux had kept his

3

mouth shut, and Breaux responded that he didn't say nothing about what happened." Det. Walker further asserts that, during the same call, Bernard instructed Breaux not to say anything that would incriminate himself and "she would do everything in her power to get him out of jail and he better walk a straight line when he got out." (Doc. 45-3 at ¶ 27). Det. Walker attests that, in another call, Bernard told Breaux that she "had taken care of the suitcase that was in his room." (Id. at ¶ 28).

Det. Walker interviewed Trosclair again on February 26, 2013. During this interview, Trosclair stated that Bernard contacted him at his residence through a friend. (Id. at ¶ 29). Trosclair also told Det. Walker that Bernard transported him the LPSO, where he wrote exactly what Bernard told him to write in his statement. (Id. at ¶ 33). After being informed of the content of the telephone calls made by Gary and Breaux from jail, Trosclair told Det. Walker that he could not be sure of the identity of the gunman because of the mask, but did not believe Breaux would do that to him because they are "acquaintances[.]" (Id. at ¶ 30-31). Additionally, Trosclair stated that Bernard paid Trosclair's friend, Daniel Harmon, $100 in exchange for help in locating Trosclair. Trosclair also asserted that Bernard paid him $20 to give his recent written statement recanting his identification of Breaux as the masked gunman. (Id. at ¶ 32; written statement of Trosclair dated 2/26/13 at Exhibit A-5).

Det. Walker interviewed Harmon on February 27, 2013. Det. Walker attests that Harmon corroborated Trosclair's story, explaining that "a woman claiming to be Breaux's mother stopped him while he was walking in his neighborhood, and…paid him $100... [in exchange for Trosclair's whereabouts]. (Doc. 45-3 at ¶ 34; written statement of Harmon dated 2/27/16 at Exhibit A-6).

Based on information received from Trosclair and Harmon, Det. Walker contacted Bernard, who refused to be interviewed and referred Det. Walker to her attorney. (Id. at ¶ 35).

Det. Walker submitted the case against Bernard to the District Attorney on charges of obstruction of justice. (Id. at ¶ 36). An arrest warrant on that charge was issued on May 28, 2013. Upon learning of the issuance of the warrant, Bernard turned herself in to the Carencro Police. (Doc. 60 at p. 2).

In a ruling dated October 4, 2013, Judge Marilyn Castle of Louisiana's Fifteenth Judicial District Court for the Parish of Lafayette found that probable cause existed to charge Breaux with attempted armed robbery and attempted first degree murder. (Doc. 43-7). The District Attorney ultimately dismissed the charges against Breaux on November 13, 2013 and against Bernard on January 27, 2014. (Doc. 1-1 at ¶¶ 28-29).

Plaintiffs filed the instant suit on November 10, 2014 in the Fifteenth Judicial District Court. (Id., generally). Plaintiffs' suit alleges a variety of federal and Louisiana law claims, including false arrest, First Amendment retaliation, malicious prosecution and defamation. Plaintiffs seek damages for mental anguish, lost employment opportunities and embarrassment, as well as attorney fees and costs associated with this suit. (Id. at ¶¶ 39, 54).

### B. Procedural History

Defendants removed Plaintiffs' suit to this court on December 15, 2014 pursuant to 28 U.S.C. §§ 1331 and 1441. (Docs. 1, 2). Plaintiffs named as defendants in this suit: the City of Carencro, Louisiana ("City"), the Carencro Police Department, Carencro Chief of Police Carlos Stout ("Chief Stout") in his individual and official capacities, Detective William Walker ("Det. Walker") in his individual and official capacities, Officer Kayla Begnaud ("Officer Begnaud") in her individual and official capacities. (Doc. 1-1 at ¶ 1).

Plaintiffs' claims against Det. Walker and Officer Begnaud were dismissed based upon Plaintiffs' failure to perfect service under Fed. R. Civ. P. 4(e). (Doc. 9). Plaintiffs' claims against

5

the Carencro Police Department were dismissed based on this court's finding that the police department is not a juridical person capable of being sued, making dismissal under Fed. R. Civ. P. 12(b)(6) appropriate. (Doc. 11).

Thus, the City and Chief Stout in his individual and official capacities are the remaining defendants in this matter. Both the City and Chief Stout have filed a motion for summary judgment seeking dismissal of all remaining claims against them in this case. Both motions are now fully briefed and, accordingly, ripe for the court's consideration.

### C. Applicable Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

## II. ANALYSIS

### A. Plaintiffs' Federal Claims Against Chief Stout

Plaintiffs' suit names Chief Stout in both his official and individual capacities. 42 U.S.C. § 1983 provides a right of action against any person who violates the constitutional rights of another "under color of any statute, ordinance, regulation, custom, or usage, of any State[.]" A cognizable claim under § 1983 alleges a violation of a right secured by the Constitution or laws of the United States and demonstrates that the alleged violation was committed by a person acting under color of state law. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013) (internal citations omitted).

Plaintiff Breaux asserts Fourth Amendment claims of false arrest, false imprisonment and malicious prosecution against Chief Stout. (Doc. 1-1 at ¶¶ 50, 56). Plaintiff Bernard asserts retaliatory arrest in violation of her First Amendment rights, in addition to the Fourth Amendment claims of false arrest, false imprisonment and malicious prosecution. (Id. at ¶¶ 12, 45, 54).

Chief Stout pleads the doctrine of qualified immunity in response to Plaintiffs' individual capacity claims. (Doc. 3). The doctrine of qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

A court considering the application of qualified immunity doctrine must determine (1) whether or not the official's conduct violated a constitutional right, and (2) whether the official's actions were objectively reasonable in light of clearly established law at the time of the conduct at issue. Saucier v. Katz, 533 U.S. 194, 201 (2001). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability…it is effectively lost if a case is erroneously

permitted to go to trial.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Thus, we consider the application of qualified immunity as early as possible in suits where it is properly pled.

Once a defendant pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the official's conduct violated clearly established law. Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001). "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm…alleged and that defeat a qualified immunity defense with equal specificity." Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012) quoting Wicks v. Miss. State Employment Services, 41 F.3d 991 (5th Cir. 1995). A court may defer its ruling on the ultimate applicability of the qualified immunity defense if it determines that further discovery is required to develop the facts before such ruling would be appropriate. Id., quoting Lion Boulos v. Wilson, 834 F.2d 504, 507 (5th Cir. 1987).

Chief Stout is the Chief of Police of the Carencro Police Department and is the supervisory of former Defendants, Det. Walker and Officer Begnaud. A supervisory official may only be held liable under § 1983 when (1) the official affirmatively participates in the conduct causing constitutional deprivation, or (2) the official implements unconstitutional policies that are causally linked to the conduct resulting in plaintiff's injury. Plaintiffs must show that Chief Stout acted or failed to act with "deliberate indifference to violations of others' constitutional rights committed by their subordinates." Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2009) citing Gates v. Texas Dept. of Prot. & Reg. Servs., 537 F.3d 404, 435 (5th Cir. 2008).

i.  **Official Capacity Claims**

Plaintiffs assert claims against Chief Stout in his official and individual capacities. Official capacity suits "generally represent another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Department of Social Services, 436 U.S. 159 (1978). Suits against a municipal chief of police should in his official capacity should be treated as suits against the municipality itself. Hafer v. Melo, 502 U.S. 21 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Because Plaintiffs advance separate claims against the City in this suit, we find the official capacity claims against Chief Stout duplicative. Plaintiffs' official capacity claims will be dismissed on that basis.

ii.  **False Arrest, False Imprisonment and Malicious Prosecution**

Plaintiffs point to Det. Walker's report (Doc. 45-8 at pp. 4 – 15) as evidence of Chief Stout's participation in Breaux's arrest which, plaintiffs allege, was unlawful. Specifically, Plaintiffs highlight Det. Walker's statements indicating that he conferred with Chief Stout after receiving Trosclair's written statement recanting his prior identification of Breaux as the masked gunman. (Id. at p. 12). Plaintiffs further point to Chief Stout's own deposition testimony, in which he admits that he listened to the audio recordings of the telephone calls between Breaux and Bernard. (Doc. 53 at pp. 7-8).

Neither party disputes that Chief Stout did not physically arrest Breaux, but if the court were to assume for the purposes of this motion that the evidence cited above is sufficient to demonstrate "affirmative participation" in Breaux's arrest by Chief Stout, his claim for false arrest would still fail as a matter of law. As stated above, the first prong of our analysis for supervisory

9

liability under § 1983 requires proof of some constitutional harm. We find that Breaux fails to show that his arrest violated his Fourth Amendment rights.

In order to sustain a constitutional claim for false arrest, Breaux must demonstrate that he was arrested without probable cause. Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001). While the existence of probable cause is a mixed question of law and fact, the majority of facts pertaining to this issue are not disputed among the parties. U.S. v. Hearn, 563 F.3d 95, 101, 103 (5th Cir. 2009). Plaintiff Breaux was arrested on February 19, 2013 following questioning at the Carencro Police Department. The statements of material facts offered by both parties affirm that Det. Williams had probable cause to arrest Breaux. It is undisputed that in a written statement Gary identified Breaux as the masked assailant. (Doc. 43-2 at ¶ IV and Doc. 69 at ¶ IV). It is also undisputed that, when informed the police department was in possession of surveillance video implicating him in the crime, Breaux responded that he wanted to see the video so that he could "see if you can really tell if it's me or not in the video...", implicating himself. (Doc. 43-2 at ¶ IV and Doc. 69 at ¶ V). Det. Williams also obtained information from informants that the masked assailant was named "Kendall" or "Kenda[.]" (Doc. 43-2 at ¶ III). The court finds that these facts, taken together are sufficient to enable a finding that Det. Williams indeed had probable cause to believe that Breaux was the masked assailant he sought.

Moreover, Breaux's arrest was followed by a preliminary examination, at which Trosclair's written statement and Det. Walker's report were considered by Judge Marilyn Castle. (Doc. 45-8); See also La. C. Cr. P. Arts. 291, et. seq. Plaintiffs allege no defect in the preliminary examination, which was an adversarial proceeding permitting the confrontation of witnesses by Bernard. La. C.Cr.P. Art. 294; State v. Jenkins, 338 So.2d 276 (La. 1976). The later dismissal of all charges against Breaux does not change the judicial finding in the preliminary examination

10

that probable cause existed for his arrest. It also fails to establish that he did not commit the crime with which he was charged. Instead, the later dismissal merely represents a decision on the part of the State of Louisiana not to prosecute Breaux for the crimes with which he was charged. Additionally, even if an officer is ultimately found to be without probable cause in an arrest, such a finding does not, in itself, foreclose the possibility of qualified immunity. Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) (internal citations omitted).

Given these findings, we conclude Plaintiffs fail to demonstrate that Breaux was arrested without probable cause, in violation of the Fourth Amendment. Consequently, we also find that, to the extent that Chief Stout participated in Breaux's arrest, his actions were reasonable in light of the law and circumstances at the time. We therefore find that Plaintiffs have failed to rebut the affirmative defense of qualified immunity, to which we find Chief Stout is entitled as to this claim.

Similarly, we find no Fourth Amendment violation in Bernard's arrest according to the uncontested facts before the court. Bernard was arrested pursuant to a valid warrant issued June 5, 2013. (Doc. 43-2 at ¶ XIV). While the existence of a facially valid warrant will normally defeat a claim for false arrest, the court must examine the validity of the warrant when, as here, it is alleged that the warrant was obtained through fraud or deception. Mendenhall v. Riser, 213 F.3d at 232.

The evidence viewed in the light most favorable to Plaintiffs does support a finding that Chief Stout participated in decisions regarding Breaux's arrest. Yet, Plaintiffs' complaint and briefs are far less specific regarding alleged participation by Chief Stout in Bernard's arrest. The court's own review of Det. Walker's report (Doc. 45-8) discloses no statement or inference of participation by Chief Stout in the investigation of Bernard's alleged obstruction activities. Plaintiffs allege no defects in the warrant application process and show no participation by Chief

Stout in that process. Based on these factual representations, the court finds that Plaintiffs fail to demonstrate that Bernard was unlawfully arrested.

Considering our reasoning above, the court will grant Chief Stout's motion for summary judgment and dismissal of all of Plaintiffs' claims for Fourth Amendment deprivation based on false arrest.

Plaintiffs' complaint additionally alleges that both Breaux and Bernard suffered the federal constitutional tort of false imprisonment. False imprisonment is defined by applicable jurisprudence as "detention without legal process." Wallace v. Kato, 549 U.S. 384, 389 (2007) quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, pp. 8885 – 886 (5th ed. 1984); 7 S. Speiser, C. Krause, & A. Gans, American Law of Torts §27:2, pp. 940-942 (1990). Taking as true the facts set forth by Plaintiffs in this matter, we find no basis for any claim of false imprisonment by either Plaintiff. As explained above, both Breaux and Bernard were arrested according to proper procedures and their complaint makes no allegation that either was deprived of due process or that proper arrest procedures were not followed. Accordingly, Defendants' motions for summary judgment will be granted as to Plaintiffs' purported federal false imprisonment claims.

Plaintiffs' complaint also makes purported federal claims for malicious prosecution. (Doc. 1-1 at ¶¶39, 54). "[T]he federal Constitution does not include a 'freestanding' right to be free from malicious prosecution." Castellano v. Fragozo, 352 F.3d 939, 945 (5th Cir. 2003). Rather, the aggrieved party must point to the specific constitutional right infringed by the "malicious prosecution." Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009). Because of the absence of a federal right, Defendants' motions will be granted as to Plaintiffs' purported federal malicious prosecution claims.

### iii. Bernard's Claim for First Amendment Retaliation

Plaintiff Bernard additionally alleges that Chief Stout participated in a violation of her First Amendment rights by conspiring with Det. Walker to have her arrested in retaliation for her public criticism of the Carencro Police Department on Facebook. (Doc. 1-1 at ¶¶ 39, 41). To support a claim for such conspiracy under § 1983, Plaintiffs must show facts that suggest: (1) an agreement among individuals to commit a deprivation, and (2) an actual deprivation. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994). Plaintiffs' complaint sets forth no facts that allege an agreement among any of the named defendants to arrest Bernard, nor any evidence of retaliative animus based on Bernard's critical Facebook post. Moreover, when met with Defendants' motions for summary judgment, it was incumbent upon Plaintiffs to move beyond the bare allegations of their complaint and allege particular facts which, if proven at trial, would satisfy their burden of proof as to this claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968). Plaintiffs allege no particular facts that would support a finding of agreement among Chief Stout and Det. Walker or any other party to deprive Bernard of her Fourth Amendment rights.

As argued by Defendants, Plaintiffs' allegations against Chief Stout regarding personal involvement with Bernard's arrest are vague and speculative. Plaintiffs' complaint and briefs contain no factual proof which would support a finding of impropriety in the warrant application process. Although Plaintiffs allege that Det. Williams and Chief Stout conspired to force Harmon and Trosclair to implicate Bernard (as having paid Trosclair to recant his prior identification of Breaux as the masked assailant in the crime in question) Bernard's proffer of this conversation is hearsay and would not be admissible at trial. Fed. R. Evid. 801. Moreover, Plaintiffs' allegation that the unnamed "they" referred to by Trosclair in his conversation with Bernard is undoubtedly

13

Det. Williams and Chief Stout is unsubstantiated. Similarly, Plaintiffs do not attack any other element of the warrant on grounds which would render it subject to suppression. United States v. Leon, 468 U.S 897 (1984). Plaintiffs' bare and unsupported allegations of conspiracy simply do not rise to the level required to meet their burden of proof in response to Defendants' motions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Finally, Plaintiffs allege without any admissible evidence that Chief Stout acted to procure false statements implicating Bernard in a scheme to influence witness testimony. On this point, Plaintiffs' only proof offered in support of Bernard's retaliation claim is a fact that Chief Stout admits that he was aware of Bernard's public criticism of the Carencro Police Department on Facebook. Chief Stout's deposition testimony discloses no retaliatory animus toward Bernard in this regard either. (Doc. 45-1 at pp. 23-26). Neither do Plaintiffs provide any evidence of, nor fully even allege the existence of such animus toward Bernard in their briefs before the court. In summary, Bernard's claim is vague and conclusory. The court affirmatively finds that probable cause existed for Bernard's arrest. We thus conclude that Plaintiffs have failed to demonstrate any Fourth Amendment or other constitutional harm as to Bernard's retaliation claim. Defendants' motions for summary judgment will be granted as to this claim.

### B. Plaintiffs' Federal Claims Against the City

A municipality may not be held vicariously liable for the acts of its employees under 42 U.S.C. § 1983. Instead, liability may only be imposed when a municipal policy causes its employees to violate someone's constitutional rights. Proof of municipal liability under §1983 requires three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the municipality's official policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The City seeks dismissal of all claims against it in this matter based on Plaintiffs' failure to articulate the necessary elements of their claims. The court found, as discussed above, that Plaintiffs did not demonstrate their arrests violated their Fourth Amendment rights or that Bernard's First Amendment rights were violated by retaliatory arrest. We now further add that Plaintiffs fail to identify an official policy or custom that was the moving force behind any alleged constitutional violation. Thus, even if Plaintiffs had successfully identified one or more constitutional violations, their municipal claims would still fail.

As if it is relevant at all, Plaintiffs point to deposition testimony by Chief Stout regarding what they allege is an absence of policy regarding proper chain of custody of evidence in criminal investigations. The City first disputes Plaintiffs' characterization of Chief Stout's deposition testimony, asserting that the Carencro Police Department does maintain proper procedures for the logging and securing of evidence. (Doc. 67 at pp. 1-3). The City further also argues that, even if Plaintiffs' allegations regarding the absence of policies are taken as true, there is no evidence that such policy or custom was the moving force behind Plaintiffs' arrests. The court agrees. Moreover, we also agree that, as argued by the City, the evidence at issue is, in fact, inculpatory, rather than exculpatory and is not asserted to prove either Plaintiffs' innocence of the charges brought against them in this matter. (Id., at p. 3).

For the foregoing reasons, the court finds that dismissal of Plaintiffs' remaining claims under 42 U.S.C. § 1983 against the City is appropriate.

**C. Plaintiffs' Louisiana Law Claims**

The court has carefully reviewed the state law claims asserted by Plaintiffs, as well as the record in this case. Although, they appear likewise to be of doubtful efficacy, we decline to exercise supplemental jurisdiction over the Louisiana law claims asserted and find that they should be dismissed without prejudice. 13 U.S. C. § 1367(3).

### III. CONCLUSION

Having reviewed the law and argument submitted in support of and opposition to the motions for summary judgment filed by Chief Stout and the City in this case, it is the finding of the court that both motions should be granted, resulting in the dismissal of all federal claims against Chief Stout and the City with prejudice. We decline to exercise supplemental jurisdiction over Plaintiffs' purported Louisiana law claims, finding that they should be dismissed without prejudice. The court will issue its judgment in conformity with this ruling.

**Alexandria, Louisiana**
**May 27, 2016**

**DEE D. DRELL, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**